

AO 93 (Rev. 12/09) Search and Seizure Warrant   (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The premises located at 11804 Atkinson Avenue,<br>Hawthorne, California 90250. | )<br>)<br>)   Case No.   17·MJ·1328<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Central_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.  Such affidavit(s) or testimony are incorporated herein by reference and attached hereto.

**YOU ARE COMMANDED** to execute this warrant on or before      14 days from the date of its issuance
                                                                                                                          *(not to exceed 14 days)*

❏ in the daytime  6:00 a.m. to 10 p.m.      ☑ at any time in the day or night as I find reasonable cause has been established and without knocking DB

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
                                        *(name)*

❏ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ❏ for _____ days *(not to exceed 30)*.

                                                                        ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:   *5/27/17 at 1:57p.m*          **JACQUELINE CHOOLJIAN**
                                                                                                  *Judge's signature*

City and state:   Los Angele, CA                          Hon. Jacqueline Chooljian
                                                                                      *Printed name and title*

AUSA: [Vanessa Baehr-Jones X0511]

*AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| **Return** | | |
|---|---|---|
| *Case No.:* | *Date and time warrant executed:* | *Copy of warrant and inventory left with:* |

*Inventory made in the presence of :*

*Inventory of the property taken and name of any person(s) seized:*
[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

*Certification*  (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AUSA: [Vanessa Baehr-Jones X0511]

## ATTACHMENT A

PREMISES TO BE SEARCHED

The SUBJECT PREMISES is a single story residence beige in color with a brown roof and white trims.  The SUBJECT PREMISES is located on Atkinson Avenue.  The main entrance to the residence faces south towards 119th street.  The numbers "11804" in black is affixed on the right side of the window located on the front of the house.  Additionally, "11804" is also identified in black on the curb of the driveway.  The SUBJECT PREMISES includes any parking spaces, garages, storage spaces, and appurtenances that are assigned to or associated with the main house located at 11804 Atkinson Avenue, Los Angeles, California 90250.

Instrumentality Protocol

**ATTACHMENT B**

    **A.    ITEMS TO BE SEIZED**

    50.    The items to be seized are evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography); 18 U.S.C. § 2252(a)(2)(distribution and receipt of child pornography); and 18 U.S.C. § 2251 (production of child pornography), specifically:

        a.    Child pornography, as defined in 18 U.S.C. § 2256(8).

        b.    Any clothing items, household decorations, or household items, such as sheets, blankets, pillows, towels, curtains, rugs, or mats, that could be used to identify the locations and/or individuals depicted in images or videos of child pornography, and/or the individual(s) producing the images or videos of child pornography.

        c.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that refer to child pornography, as defined in 18 U.S.C. § 2256(8), including but not limited to documents that refer to the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, order, requesting, trade, or transaction of any kind, involving child pornography.

        d.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, tending to identify persons involved in the possession, receipt,

**Instrumentality Protocol**

distribution, transmission, reproduction, viewing, sharing, purchase, downloading, production, shipment, order, requesting, trade, or transaction of any kind, involving child pornography, as defined in 18 U.S.C. § 2256(8).

e.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that identify any minor visually depicted while engaging in sexually explicit conduct, as defined in 18 U.S.C. §§ 2256(2)(A), (B).

f.    Any and all records, documents, programs, applications, or materials or items which are sexually arousing to individuals who are interested in minors, but which are not in and of themselves obscene or which do not necessarily depict minors involved in sexually explicit conduct.  Such material is commonly known as "child erotica" and includes written materials dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, missing children, investigative techniques of child exploitation, sexual disorders, pedophilia, nudist publications, diaries, and fantasy writings.

g.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that pertain to "Soole," "Fritter," "Kronos," ARLAN HARRELL, Wickr, or online forums dedicated to the trading of child pornography and networks associated with hosting those forums.

Instrumentality Protocol

h.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that pertain to accounts with any Internet Service Provider.

i.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, regarding ownership and/or possession of the SUBJECT PREMISES.

j.   Any records, documents, programs, applications, or materials, including any daycare business records, identifying possible minor victims depicted in child pornography and/or minor victims of sexual abuse.

k.   Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, regarding ownership and/or possession and/or use of any digital device(s) found inside the SUBJECT PREMISES.

l.   Any digital device used to facilitate the above-listed violations and forensic copies thereof.

m.   With respect to any digital device used to facilitate the above-listed violations or containing evidence falling within the scope of the foregoing categories of items to be seized:

i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

Instrumentality Protocol

ii.   evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.     records of or information about Internet Protocol addresses used by the device;

ix.   records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

51.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created,

v

Instrumentality Protocol

modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

52. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data; and security devices.

## B. SEARCH PROCEDURE FOR DIGITAL DEVICES

53. In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant. If additional time is needed, the

Instrumentality Protocol

government may seek an extension of this time period from the Court on or before the date by which the search was to have been completed.

b. The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i. The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized. The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

ii. The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The team searching the digital data also may use sophisticated tools, such as forensic hashing tools, to identify child pornography (including, but not limited to, "Encase" and "Forensic Tool Kit," or "FTK"). Forensic hashing is the process of using a mathematical function, often called an algorithm, to generate a numerical identifier for data (such as a particular file). If the data is changed, even very slightly (such as the addition or deletion of a comma or a period), the identifier should change. A hash value can be thought of as a "digital fingerprint" for data. The team searching digital

Instrumentality Protocol

devices in this case will also use a "hash set," which contains the hash values of image and video files associated with known identified victims of child pornography to determine whether these files are stored within digital devices.  Because this "hash set" is constantly being updated as investigations result in the rescue of children depicted in child pornography images/videos, it will not contain the hash values of all currently identified image and video files.  The team searching the digital devices will only use search protocols specifically selected to identify items to be seized under this warrant.

c.   When searching a digital device pursuant to the specific search protocols selected, the search team shall make and retain notes regarding how the search was conducted pursuant to the selected protocols.

d.   If the search team, while searching a digital device, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that device pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

e.   If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

viii

Instrumentality Protocol

f.   If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

g.   If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of items to be seized, the government may retain forensic copies of the digital device but may not access them (after the time for searching the device has expired) absent further court order.

h.   The government may retain a digital device itself until further order of the Court or one year after the conclusion of the criminal investigation or case (whichever is latest), only if the device is determined to be an instrumentality of an offense under investigation or the government, within 14 days following the time period authorized by the Court for completing the search, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending).  Otherwise, the government must return the device.

i.   Notwithstanding the above, after the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

54.   In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

ix

Instrumentality Protocol

    a.   Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

    b.   Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

    c.   Any magnetic, electronic, or optical storage device capable of storing digital data;

    d.   Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

    e.   Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

    f.   Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

    g.   Any passwords, password files, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

55.   During the execution of this search warrant, the law enforcement personnel are authorized to depress the fingerprints and/or thumbprints of ARLAN HARRELL at the SUBJECT PREMISES onto the Touch ID sensor of any Apple iPhone, iPad, or other Apple brand device in order to gain access to the contents of any such device.

x

Instrumentality Protocol

56.    The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

Instrumentality Protocol

## AFFIDAVIT

I, Diane Asato, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.   I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") in Los Angeles, California, and I have been so employed since June 2003.   I am currently assigned to the HSI Los Angeles Child Exploitation Investigations Group ("CEIG"), where I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a) and 2252A.   I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review various examples of child pornography in all forms of media, including computer media.   I have also participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses.

2.   Through my training and experience, I have become familiar with the methods used by people who commit offenses involving the sexual exploitation of children.   My training and experience has given me an understanding of how people who commit offenses relating to the sexual exploitation of children use the Internet to facilitate and commit those offenses.

Instrumentality Protocol

## II.  **PURPOSE OF AFFIDAVIT**

3.    This affidavit is made in support of:

a.    a complaint and arrest warrant charging ARLAN WESLEY HARRELL ("HARRELL") with a violation of 18 U.S.C. § 2251(a), production of child pornography, from on or about July 21, 2016, and continuing to on or about April 22, 2017, in Los Angeles County, within the Central District of California, and elsewhere;

b.    an application for a warrant to search the residence located at 11804 Atkinson Avenue, Hawthorne, California 90250, (the "SUBJECT PREMISES"), more fully described below and in Attachment A, which is attached hereto and incorporated herein by reference, and to seize evidence, fruits, and instrumentalities, as specified in Attachment B, which is also attached hereto and incorporated by reference, of violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography); 18 U.S.C. § 2252A(a)(2) (distribution and receipt of child pornography); and 18 U.S.C. § 2251(a) (production of child pornography) (the "SUBJECT OFFENSES").

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from HSI Boston and HSI Philadelphia Special Agents and other law enforcement officials.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and

Instrumentality Protocol

statements described in this affidavit are related in substance and in part only.

## III. **PREMISES TO BE SEARCHED**

5.     The SUBJECT PREMISES is a single story residence beige in color, with a brown roof and white trim.   The SUBJECT PREMISES is located on Atkinson Avenue and the main entrance to the residence faces south towards 119th street.   The numbers "11804" in black is affixed on the right side of the window located on the front of the house.   Additionally, "11804" is also identified in black with a white background on the curb of the driveway. The SUBJECT PREMISES includes any parking spaces, garages, storage spaces, and appurtenances that are assigned to or associated with the main house located at 11804 Atkinson Avenue, Los Angeles, California 90250.

## IV.   **ITEMS TO BE SEIZED**

6.     Based on the foregoing, I respectfully submit that there is probable cause to believe that the items listed in Attachment B, which constitute evidence of violations of the SUBJECT OFFENSES will be found at the SUBJECT PREMISES.

## V.    **SUMMARY OF PROBABLE CAUSE**

7.     HSI Boston and Philadelphia, along with law enforcement abroad, have been investigating an online forum for trading child pornography since approximately October 2016. Foreign law enforcement recently arrested a suspect abroad (herein referred to as "FS1") who was producing child pornography offered on the forum.   FS1 began cooperating with law enforcement and provided information about another individual active on the

3

Instrumentality Protocol

forum under the user names of "Soole," "Fritters," and "Kronos." FS1 told investigators that he plays XBOX games with "Soole" and "Soole's" nickname on XBOX is "The War Titan." HSI Boston obtained a court order for subscriber information for the XBOX Live username "The War Titan" from May 23, 2016, to May 23, 2017. According to Microsoft, the gamer tag "The War Titan" was created on or about September 18, 2007, with a customer name listed as ARLAN HARRELL at the SUBJECT PREMISES.

8.    Upon receiving the lead from HSI Boston, HSI Los Angeles reviewed images and videos of child pornography recovered from FS1's digital devices that investigators believe "Soole" posted to the forum. In an effort to identify the victims, I compared the children depicted in these images and videos with images found on the publicly available Facebook pages of HARRELL's parents. I was able to determine that a female toddler depicted in the child pornography images associated with "Soole" appeared to be the same minor as that depicted in multiple photographs posted to these Facebook pages. Additionally, agents were able to identify a movie theater depicted in some of the images "Soole" posted to the forum as a Cinemark Theater located in Los Angeles, California. According to record checks, HARRELL is employed by Cinemark.

9.    Based on the foregoing, I believe that "Soole" and "The War Titan" are the same individual, and that this individual is HARRELL. I further believe that HARRELL used his minor female relative to produce child pornography, in violation of § 2251(a),

Instrumentality Protocol

and that evidence of the SUBJECT OFFENSES will therefore be found
at his residence, the SUBJECT PREMISES.

**VI.  BACKGROUND – DEFINITIONS, AND TRAINING AND EXPERIENCE**

10.  The following terms, as used in this affidavit, have
the following meanings:

a.  "Minor," "sexually explicit conduct," "visual
depiction," "producing," and "child pornography" are defined as
set forth in 18 U.S.C. § 2256.

b.  "Child erotica" means materials or items that are
sexually arousing to persons who have a sexual interest in
minors, but that are not, in and of themselves, legally obscene,
or do not necessarily depict minors in sexually explicit
conduct.

c.  "Computer" is defined pursuant to 18 U.S.C.
§ 1030(e)(1) as "an electronic, magnetic, optical,
electrochemical, or other high speed data processing device
performing logical or storage functions, and includes any data
storage facility or communications facility directly related to
or operating in conjunction with such device."

d.  "Computer server" or "server" is a computer that
is attached to a dedicated network and serves many users.  A web
server, for example, is a computer which hosts the data
associated with a website.  That web server receives requests
from a user and delivers information from the server to the
user's computer via the Internet.  A domain name system ("DNS")
server, in essence, is a computer on the Internet that routes
communications when a user types a domain name, such as

Instrumentality Protocol

www.cnn.com, into his or her web browser.   Essentially, the
domain name must be translated into an Internet Protocol address
so the computer hosting the website may be located, and the DNS
server provides this function.

e.   "Internet" is defined as the worldwide network of
computers — a noncommercial, self-governing network devoted
mostly to communication and research with roughly 500 million
users worldwide.   The Internet is not an online service and has
no real central hub.   It is a collection of tens of thousands of
computer networks, online services, and single user components.
In order to access the Internet, an individual computer user
must use an access provider, such as a university, employer, or
commercial Internet Service Provider, which operates a host
computer with direct access to the Internet.

f.   "Internet Service Providers" ("ISPs") are
commercial organizations that are in business to provide
individuals and businesses access to the Internet.   ISPs provide
a range of functions for their customers, including access to
the Internet, web hosting, e-mail, remote storage, and co-
location of computers and other communications equipment.   ISPs
can offer a range of options in providing access to the
Internet, including telephone based dial-up, broadband based
access via digital subscriber line ("DSL") or cable television,
dedicated circuits, or satellite based subscription.   ISPs
typically charge a fee based upon the type of connection and
volume of data, called bandwidth, which the connection supports.
Many ISPs assign each subscriber an account name (a user name or

6

Instrumentality Protocol

screen name), an e-mail address, an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with the ISP over a telephone line, through a cable system or via satellite, and can access the Internet by using his or her account name and personal password.

        g.   "Internet Protocol Address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses can also be "static," if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet. IP addresses are also used by computer servers, including web servers, to communicate with other computers.

        h.   A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol ("HTTP").

        i.   "Hyperlink" refers to an item on a webpage which, when selected, transfers the user directly to another location in a hypertext document or to some other webpage.

## VII. STATEMENT OF PROBABLE CAUSE

### A.   BACKGROUND REGARDING NETWORK A AND WEBSITE A

    11.   On or about May 24, 2017, I received information from HSI Boston group supervisor Richard Sabatini, and HSI

Instrumentality Protocol

Philadelphia Special Agent Emily Evans regarding and individual utilizing the user names "Soole," "Fritters," and "Kronos" who was seen on a forum[1] on an anonymous network, and on Wickr, a chatting application, discussing the sexual abuse of children.

12.   In or about October 2016, HSI agents in Boston and Philadelphia became involved in an ongoing child pornography investigation.   At the present time, this investigation involves multiple individuals, believed to be residing across the United States as well as abroad, who are members of an Internet-based website ("herein referred to as website A") that operates on an anonymous online network.

13.   Website A is a forum on Network A that is dedicated to the sexual exploitation of children from birth to five years old. Website A is run by three unknown individuals that maintain Website A, approve members to become members of Website A, and provide guidance/support to members of Website A.   Website A consists of several sections to include: News, Security/Technology, Boys, and Girls.   The boy and girl sections are further broken down into age groups, pictures, and videos.

---

[1] The actual name of the forum is known to law enforcement. The forum remains active and disclosure of the name of the forum would potentially alert its members to the fact that law enforcement action is being taken against the forum, potentially provoking members to notify other members of law enforcement action, flee, and/or destroy evidence.   Accordingly, for purposes of the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the forum will be identified as "Website A."

Instrumentality Protocol

14.     In order to become a member of website A one must
apply for membership by creating an account and uploading
images/videos of child pornography that is then approved or
disapproved by the administrators of Website A.   Members that are
approved must upload images/videos of child pornography once
every 30 days to remain a member of Website A.   Once approved
members are assigned a "rank" that is based on the amount of
participation on Website A, this includes the amount of child
pornography they upload/share on the forum.

15.     Website A operates on a network ("Network A")[2]
available to Internet users who are aware of its existence.
Network A is designed specifically to facilitate anonymous
communication over the Internet.   In order to access Network A, a
user must install computer software that is publicly available,
either by downloading software to the user's existing web
browser, downloading free software available from the Network's
administrators, or downloading a publicly-available third-party
application.   Using Network A prevents someone attempting to
monitor an Internet connection from learning what sites a user
visits and prevents the sites the user visits from learning the
user's physical location.   Because of the way Network A routes

_____

[2] The actual name of Network A is known to law enforcement.
Network A remains active and disclosure of the name of Network A
would potentially alert its members to the fact that law
enforcement action is being taken against Network A, potentially
provoking members to notify other members of law enforcement
action, flee, and/or destroy evidence.   Accordingly, for
purposes of the confidentiality and integrity of the ongoing
investigation involved in this matter, specific names and other
identifying factors have been replaced with generic terms and
the network will be identified as "Network A."

9

Instrumentality Protocol

communication through other computers, traditional IP
identification techniques are not viable.

16.    Websites that are accessible only to users within
Network A can be set up within Network A, and Website A is one
such website.  Accordingly, Website A is not accessible through
the traditional Internet.  Only a user who has installed the
appropriate software on the user's computer can access Website A.
In order to access Website A, a user either has to know the exact
web address or has to discover its exact web address from other
servers on Network A that maintain indexes of known websites.
Accessing Website A therefore requires numerous affirmative steps
by the user, making it extremely unlikely that any user could
have simply stumbled upon Website A without first understanding
its content and knowing that its primary purpose was to view and
distribute child pornography.

17.    Network A's software protects users' privacy online by
bouncing their communications around a distributed network of
relay computers run by volunteers all around the world, thereby
masking the users' actual IP addresses, which could otherwise be
used to identify a user.

18.    Network A also makes it possible for users to hide
their locations while offering various kinds of services, such as
web publishing, forum/website hosting, or an instant messaging
server.  Within Network A itself, entire websites can be set up
which operate in the same manner as regular public websites, with
one critical exception — the IP address for the web server is
hidden and is replaced with a Network-based web address.  A user

10

Instrumentality Protocol

can only reach such sites if the user is using the Network client and operating in Network A.   Because neither a user nor law enforcement can identify the actual IP address of the web server, it is not possible to determine through public lookups where the computer that hosts the website is located.   Accordingly, it is not possible to obtain data detailing the activities of the users from the website server through public lookups.

B.   **INVESTIGATION OF SUSPECT USER "SOOLE"**

19.   In or about October 2016, HSI Boston started investigating Website A as part of an ongoing undercover operation.   As part of this undercover operation HSI Boston has identified numerous members of the forum as producers of child pornography.   One such member observed by agents was user "Soole" aka "Fritters" aka "Kronos."   During that time, HSI Boston Agents have downloaded numerous images and videos of child pornography of children ages approximately six months old to five years old. The individual using the screen name "Soole" has posted approximately one hundred and thirteen posts on Website A.   These posts include:

July 31, 2016:

"When I post my work and see it has 1200 views and 1 comment and 3 thumbs up statistically that means that 1196 people did not like what I shared and should not continue with it because it is undesired . . . ."[3]

August 4, 2016:

"You can never have enough babies around !"

---

[3] Based on my knowledge of Website A and my review of all of "Soole's" posts, I interpret "Soole's" reference to "his work" to mean the child pornography he has produced and posted to the forum.

11

Instrumentality Protocol

**November 3, 2016:**

"For those of you who may not know me I do not always
post here but will forever remain on the site I still
wish to attract more fellow producers and contributors
to our community to a safe area and for this I needed
to create a separate account because not everyone
trust big name prods (feel intimidated) so this is the
work of my other self. Also as a friendly warning to
any who come to leak our VIP and Prod zone remember
you never know who is on the other end of your
computer screen if you leak or trade our material we
will find out When we choose to share it is becasue we
are kind so be thankful as lots of work go into
producing and making stuff to share After you watch
and fap to material and horniness is gone you can
delete but we cannot delete from the internet so we
live with the fear one day we make mistake and get
caught so be thankful and not petty please we are all
here to enjoy and fap to Happy Kids Any and all can be
the same people so lets jsut have fun and follow the
rules"

**November 24, 2016:**

"Im not gonna brag but I actually know this producer
and I can say is a really nice person If you guys are
nice maybe one day I will make an introduction Then
again Im a little greedy sometimes so maybe not Take
care enjoy stay safe"

**December 2, 2016:**

"Please be careful with who you trust my friends as my
friend T****⁴ ( say LEO are getting desperate and times
are tough and we all need to be together easiest way
to confirm someone is legitimate is to do a simple
validation all it takes is one picture We are here for
you all and in these times better we stick together if
any issues or concerns arise we actively encourage you
to contact members of administration and we will do
the best to help you or clarify where is needed Sorry
I know is in wrong section just wanted make a point is
all I will disable preview as to not offend anyone –
SOOLE"

**December 28, 2016:**

"I love how comfortable he is to be masturbated and he
has a very cute penis also. I am sure now that all

---

⁴ The user name is known to law enforcement, but is redacted
for purposes of this affidavit.

12

Instrumentality Protocol

kids in asia know at least one pedo haha I may need to make a trip because they all seem so willing."

20.    HSI Boston and HSI Philadelphia began investigating several individuals who were active members of Website A identified on Network A as sharing or offering to share child pornography images/videos.  Since that time, foreign law enforcement has arrested an individual ("herein referred to as FS1") who was producing child pornography images/videos and sharing them with individuals in Website A and Wickr.[5]  FS1 has been cooperating with law enforcement and has provided the following information to law enforcement:

a.    "Soole" along with four other members including FS1 are members of a group on Wickr.  "Soole" recently sent four images of children in a public location to members in the wicker group.

b.    I have reviewed the images that "Soole" shared in the Wickr group and determined that some of the images were taken at what appeared to be a Cinemark movie theater in Los Angeles, California.

21.    I learned from SA Evans that during the foreign law enforcement's review of FS1's digital devices, foreign law enforcement discovered a folder on FS1's computer.  FS1 informed foreign law enforcement that the content of the folder was sent by the group members of Website A via Wickr and were taken specifically for FS1, as recent as February 2017.

---

[5] Wickr is an application designed to make detection from law enforcement more difficult.  In fact, Wickr allows users to set an automatic delete time, so that messages automatically self-destruct/erase.

Instrumentality Protocol

a.   In addition, foreign law enforcement discovered images/videos in a folder labeled "Soole" for FS1's computer. The images/videos contained images of children being exploited, some of those images were taken as recently as April 2017.

b.   FS1 stated that he plays XBOX games with "Soole" and "Soole's" nickname on XBOX is "The War Titan."

22.   On or about May 23, 2017, HSI Boston obtained a court order for subscriber information for the Xbox Live username "The War Titan" from May 23, 2016, to May 23, 2017.   According to Microsoft, the gamer tag "The War Titan" was created on or about September 18, 2007, with a customer name listed as ARLAN HARRELL at the SUBJECT PREMISES.   The email account associated with the XBOX Live account was listed as "wildacexxxtitan@gmail.com." Furthermore, IP address 172.113.97.151 ("the SUSPECT IP ADDRESS") was utilized to access the XBOX Live account from approximately November 22, 2013, to approximately May 23, 2017.

C.   **WEBSITE A POSTS BY "SOOLE"**

23.   SA Evans provided me with the chat logs along with video and images retrieved from Website A.   I have reviewed the images/videos associated with "Soole" in Website A.   The following is a summary of some of "Soole's" chats:

a.   On or about April 14, 2017, user "Soole" posted:

i.   "Had a little fun with my boy this past week and after a little thought and discussion we decided to proceed with our next step in exploration. There is nothing more special then when your boy makes the choice to give himself to you.   For those lucky enough to share a moment like this with

14

Instrumentality Protocol

your special friend or friends remember to cherish it always............... And dont forget to share XD Hope you all like enjoy and be safe P.S 2 Picks one before one after all in the same file 1Prev:. . . ."

        ii.  In addition, "Soole" posted a hyperlink titled, "![Image](http://pixs.ru/showimage/CummyHolem_4674129_25881125.jpg)," which contained an image file titled "CummyHolem_4674129_25881125.jpg."  This file consists of approximately 16 images of video thumbnails depicting what appears to be a pre-pubescent minor, with semen on his butt and anal area.  An adult male's hand is seen spreading the minor's butt cheeks apart and exposing the anus.

24.  On or about April 22, 2017, user "Soole" posted "Looks like I left a few things out sorry !..."  Attached to this post, were five image file hyperlinks.  Three of the five hyperlinks are described as follows:

        a.  "![Image](http://felixxxboni3mk4a.onion/img/uploads/170422/Felixxx_225413_rSF_3FS.jpg)"- this image depicts a naked pre-pubescent minor boy laying on his back on a brown blanket with his legs apart exposing his penis.  On the minor's stomach is a white card with the writing "Soole xfritters."

        b.  "![Image](http://felixxxboni3mk4a.onion/img/uploads/170422/Felixxx_225536_ouE_4FS.jpg)"- this image depicts what appears to be the same minor boy in the previous image lying on the same brown blanket with his legs raised, exposing his penis and anal area.  Next to the child's anus is the same white card with the writing "Soole xFritters."

Instrumentality Protocol

c.   "![Image](http://felixxxboni3mk4a.onion/img/uploa ds/170422/Felixxx_225630_LAV_5FS.jpg)" –depicts what appears to be a minor boy bent on his knees exposing his anus.  Resting on the child's leg is the same white card with the writing "Soole xFritters."

25.   On or about May 25, 2017, a DHS summons was served on Time Warner Cable/Charter Communications requesting subscriber information relating to the user of the SUSPECT IP ADDRESS, which was tied to "The War Titan" for May 7, 2017, and May 23, 2017. According to Charter Communications, the SUSPECT IP ADDRESS was assigned to Arlan Harrell at the SUBJECT PREMISES.  According to Charter Communications, the internet service date is listed as January 20, 2016, and the internet service is listed as currently active.

26.   On or about May 24, 2017, Intelligence Research Specialist ("IRS") Nancy Bravo and SA Emily Evans conducted a Consolidated Lead Evaluation and Reporting ("CLEAR") records check for the residents residing at the SUBJECT PREMISES. According the CLEAR, the following individuals come back to the SUBJECT PREMISES: ARLAN HARRELL, Avery Harrell, Ashton Russ, Philip Harrell, and Richetta Harrell are currently associated with the SUBJECT PREMISES.  Based on my training and experience, I know that CLEAR is a report generated by Thomson Reuters, which is a company that consolidates public records, including addresses, driver licenses, property deed transfers, and corporate information, as well as some property records.

16

Instrumentality Protocol

27.     On or about May 24, 2017, IRS Bravo conducted record checks in the California Department of Motor Vehicles ("DMV") records check for ARLAN, Avery, Philip, Richetta Harrell, and Ashton Russ.  The DMV records for ARLAN, Avery, Philip, Richetta Harrell, and Ashton Russ lists the SUBJECT PREMISES as their address.  In addition, the following vehicles with California license plates are also registered to the SUBJECT PREMISES: A 2013 Dodge XXXX6J1 (Phillip or Avery Harrell); 2003 Infinity XXXX996 (Ashton Russ); 2008 Ford XXXX438 (ARLAN HARRELL); 2011 Dodge XXXX524 and 2017 Kia XXXX287 (Philip Harrell); and 2010 Mercedes XXXX234 (Richetta Harrell or Arianne Russ).

28.     On or about May 24, 2017, SA My Bach obtained information from the Department of Social Services State of California, the department which registers daycare businesses. SA Bach learned that the SUBJECT PREMISES is registered as 24/7 daycare facility since December 6, 2016.  Richetta is listed as the registrant of the daycare.

29.     On or about May 25, 2017, SA My Bach, Elaine Kwong, and Forrest Silberstein conducted surveillance at the SUBJECT PREMISES.  SA Kwong observed the following vehicle XXX524 in the driveway of the SUBJECT PREMISES.  Additionally, SA Kwong observed the vehicles with license numbers XXX287 and XXXX438 parked on the street in front of the residence.  SAs observed a woman and man appearing to be Richetta and Philip exit the SUBJECT PREMISES and depart the residence in separate vehicles.

30.     Subsequently SA Kwong used a wireless internet device to identify wireless Internet services that were being

17

Instrumentality Protocol

broadcasted publicly near the SUBJECT PREMISES.  SA Kwong
identified approximately five different secured wireless access
points and no unsecured wireless access points.  One of the
secured wireless points being broadcasted was "Harrell's
Clan804."  Based on my training and experience, I know that a
secured wireless access point would require a password or key
code in order to access the wireless Internet service.

D.   **IDENTIFICATION OF MINOR CHILDREN EXPLOITATED BY**
     **"SOOLE" IN WICKR AND WEBSITE A**

31.   On or about May 25, 2017, SA Evans provided SA Asato
and IRS Bravo images and videos that were likely produced and
distributed by "Soole" in Website A and Wickr.  IRS Bravo
reviewed the images and videos provided by SA Evans and
determined that some of the children in the sexually explicit
images and videos appeared to be relatives of HARRELL based on
her review of the Facebook profiles of HARRELL's immediate family
members.

32.   The folder labeled "Daisy 2017," which was recovered
from FS1's digital devices, contains a series of approximately 21
images depicting what appears to be the same female toddler
("Minor Victim 1").  The series progresses from the toddler being
clothed to close ups of the toddler's vaginal area.  Placed next
to the minor in majority of the photos is a white card written in
black ink with the word "Soole".  The following is a description
of two of the images:

a.   Image titled "SD15.jpg" depicts a close up of the
vaginal area of a prepubescent child approximately one year old.

18

**Instrumentality Protocol**

The word "SOOLE<3" is typed on a while sheet of paper and is displayed on the upper portion of the image.  The female child appears to be a relative of Harrell and appears to be the same female child who is on the Facebook pages of Philip and Kayla Harrell.

b.    Image titled "SD16.JPG" depicts a close up of the vaginal area of a prepubescent child approximately one year old. The hand of an adult male which is partially blacked out is spreading the vaginal area of the female child.  The word "Soole<3" is typed in small letters and is displayed on the child's thigh.

33.  Based on my training and experience and my investigation of "Soole/Fritters/Kronos," I know that producers of child pornography like to mark their images and / or videos by displaying some type of identifier to show ownership.  For example in this investigation, I believe that "Soole/Fritters/Kronos" are the user names associated with HARRELL and these monikers are depicted in the images described above to show HARRELL created and owned these images.

34.  In addition, on or about May 25, 2017, SA Evans provided me with a MP4 video titled "Pee on my bed" which she received from foreign law enforcement.  SA Evans informed me that the video was also retrieved from the digital devices of FS1. The video is approximately 18 seconds long and depicts what appears to be a female toddler who appears to be Minor Victim 1. Minor Victim 1 is lying on her back exposing her chest and vagina.  The video focuses in on the girl urinating and an adult

Instrumentality Protocol

hand is seen wiping the girl's vagina with a white cloth.   While the video is focused on the vaginal area, the adult hand spreads the vagina area of the girl.   The face of Minor Victim 1 is visible during this video.

35.   I have also reviewed other videos recovered from FS1's digital devices that investigators believe to be produced by "Soole," including a video that shows the grey shoes of the individual who appears to be taking the video.   In another video, I observed black, white, and grey shorts that also appear to the clothing of the individual taking the video.   Finally, throughout all of these images and videos, I observed bedroom items such as sheets, blankets, and pillows that could be used to identify the location of the production of the video, as well as children's items such as toys and clothing.   I also watched a video that appears to have been produced in a bathroom, which shows a red bath mat.

36.   After reviewing the "Pee on my bed" video, I compared the face of Minor Victim 1 with images obtained from the Facebook pages of HARRELL's parents, Richetta and Philip Harrell,[6] which were publicly available.   For example, I reviewed an image posted to Richetta Harrell's Facebook page that depicts Richetta and Philip Harrell with several minor children.   One of the minor children appears to be Minor Victim 1.   Additionally, I reviewed an image posted to Philip Harrell's Facebook page on April 30,

---

[6] I was able to determine that Richetta and Philip Harrell were HARRELL's parents from government record checks and a publicly available website for the California Birth Index.

Instrumentality Protocol

2017, that appears to be Minor Victim 1, with the caption, "Today I'm 2yrs old . . . HappyBirthday pawpaw love you."

37.    In addition, record checks with a government database indicate that Harrell has been employed with a Cinemark movie theater since August 2016.  As referenced above, "Soole" posted some images of children (not sexually explicit) on Wickr that appear to have been taken at the Cinemark movie theater located in Los Angeles, California.

38.    Therefore, I believe that the individual utilizing user name "Soole/Fritter/Kronos" is HARRELL who resides at the SUBJECT PREMISES.

## VIII.  TRAINING AND EXPERIENCE REGARDING INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

39.    Because of the structure of Website A, Network A, and Wickr, it is possible for users to view and distribute images/videos of child pornography to their own computers or digital devices.  However, as set forth below in detail, I know from my training and experience, and the training and experience of other law enforcement officers experienced in investigating crimes involving the sexual exploitation of children with whom I have had discussions, that people who have a sexual interest in children, as demonstrated by their chats in Website A, often possess and maintain images of child pornography to satisfy their sexual interest in children.

40.    As set forth above, there is probable cause to believe that an individual at the SUBJECT PREMISES utilized Website A and Wicker to view and distribute produced child pornography.  Based

21

Instrumentality Protocol

on my training and experience, and the training and experience of other law enforcement officers experienced in investigating crimes involving the sexual exploitation of children with whom I have had discussions, I have learned that individuals who view multiple images of child pornography, including on web-based bulletin boards, are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a.   Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media; or from literature describing such activity.

b.   Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media.  Individuals who have a sexual interest in children or images of children often use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

22

Instrumentality Protocol

c.   Individuals who have a sexual interest in children or images of children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etcetera, in the privacy and security of their home or some other secure location.   Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and/or videotapes for many years.

d.   Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area.   These collections are often maintained for several years and are kept close by, usually at the collector's residence or inside the collector's vehicle, to enable the individual to view the collection, which is valued highly.

e.   Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/ collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they

Instrumentality Protocol

have been in contact and who share the same interests in child pornography.

       f.    Individuals who access hidden and embedded child pornography-related bulletin boards, and other forums such as newsgroups and IRC chatrooms, are typically more experienced child pornography collectors.  These individuals likely would have gained knowledge about such forums through online communications with other individuals who have a sexual interest in children or images of children.

       g.    Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

    41.  Child pornography received via computer is extremely mobile.  Through computer technology, digital files are easily reproduced and transported.  For example, with the click of a button, images and videos containing child pornography can be put onto thumb drives so small that they fit onto a keychain.  Just as easily, these files can be copied onto floppy disks or compact disks, and/or stored on iPods, Blackberries, or cellular telephones.  Because someone at the SUBJECT PREMISES likely collects and values child pornography, which is easily-stored and duplicated, there is probable cause to believe that evidence of a child pornography collection will be found in the SUBJECT PREMISES.

Instrumentality Protocol

## IX.  AUTHORIZATION FOR NIGHT SERVICE AND NO-KNOCK ENTRY

42.   This affidavit also seeks authorization for night service and no-knock entry in order to ensure officer and victim safety and prevent any destruction of the digital evidence.

43.   Based on my training and experience, I know that individuals actively trading child pornography on highly secure online networks, such as Network A used for Website A, frequently discuss the use of encryption methods.  I also know that many encryption methods can be employed incredibly rapidly.  For instance, certain encryption software programs will encrypt an entire volume of a digital device with one key stroke.  Once a piece of digital media is encrypted, it may be impossible for law enforcement to retrieve any evidence from it.  I also know from my own experiences executing child exploitation search warrants that there are a number of rapid techniques a defendant can use to destroy evidence, including placing the digital devices in a bucket of acid, or destroying the devices with a dumbbell or a firearm.

44.   Here, there are particular reasons to be concerned with the latter form of destruction.  On May 25, 2017, HSI Intelligence Research Specialist Nancy Bravo advised me that she discovered approximately 22 firearms were registered to the occupants of the SUBJECT PREMISES based on a registered weapons check.

45.   This also poses significant safety concerns during the execution of the search and arrest warrants.  On May 25, 2017, I spoke with a member of the Homeland Security Special Response

Instrumentality Protocol

Team, a highly trained tactical unit, who advised me that a nighttime, no-knock entry would allow his team to execute the warrants more safely, given the number of firearms likely located at the residence and given the potential that minor victim(s) could be residing there.

46.  Accordingly, in order to preserve the evidence and ensure officer and victim safety during execution of the warrants, this affidavit seeks authorization for night service and no-knock entry.

## X.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES

47.  As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.  Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that data in digital form can be stored on a variety of digital devices and that during the

26

Instrumentality Protocol

search of a premises it is not always possible to search digital devices for digital data for a number of reasons, including the following:

    a.   Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. There are so many types of digital devices and software programs in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched.

    b.   Digital data is particularly vulnerable to inadvertent or intentional modification or destruction. Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data. As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is essential to conducting a complete and accurate analysis of data stored on digital devices.

    c.   The volume of data stored on many digital devices will typically be so large that it will be highly impractical to search for data during the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage

Instrumentality Protocol

space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 500 or more gigabytes are now commonplace. Consequently, just one device might contain the equivalent of 250 million pages of data, which, if printed out, would completely fill three 35' x 35' x 10' rooms to the ceiling. Further, a 500 gigabyte drive could contain as many as approximately 450 full run movies or 450,000 songs.

      d. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files saved to a hard drive can be stored for years with little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, i.e., space on a hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space, for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Similarly, files that have been viewed on the Internet are often automatically downloaded into a temporary directory or cache. The browser typically maintains a fixed

Instrumentality Protocol

amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently downloaded or viewed content.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment.  Recovery also can require substantial time.

     e.   Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications and materials contained on the digital devices are, as described further in the attachments, called for by this warrant.  Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole.  Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently

29

Instrumentality Protocol

used.  Web browsers, e-mail programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords.  Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times the computer was in use.  Computer file systems can record data about the dates files were created and the sequence in which they were created.  This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.  Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

    f.   Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device.  For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device.  Evidence of the absence of particular data on a digital device is not segregable from the digital device.  Analysis of the digital device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment, and can require substantial time.

Instrumentality Protocol

g. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## XI. CONCLUSION

48. Based on the foregoing, I believe there is probable cause:

a. to find that HARRELL produced child pornography, in violation of 18 U.S.C. § 2251(a), from on or about July 21, 2016, and continuing to on or about April 22, 2017, in Los Angeles County, within the Central District of California, and elsewhere; and

b. to believe that evidence, fruits, and instrumentalities of violations 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography); 18 U.S.C. § 2252(a)(2)(distribution and receipt of child pornography); and 18 U.S.C. § 2251(a) (production of child pornography), as described above and in Attachment B of this affidavit, will be found in a search of the SUBJECT PREMISES, as further described above and in Attachment A of this affidavit.

## XII. CERTIFICATION REGARDING REVIEW OF CHILD PORNOGRAPHY BY U.S. MAGISTRATE JUDGE

49. The image described in paragraph 32(b) was shown to the Honorable Jacqueline Chooljian, U.S. Magistrate Judge, on May 27, 2017, for her review. See United States v. Perkins, No. 15-50035 (9th Cir. Mar. 13, 2017) (warrant applications based on alleged child pornography under the 18 U.S.C. § 2256(2)(A)(v) standard — that is, including "the lascivious exhibition of the

Instrumentality Protocol

genitals or pubic area" — should "provide copies of the images for the magistrate's independent review").  The image was then placed in a sealed envelope, signed by both the affiant and the Honorable Jacqueline Chooljian.  The envelope containing this image will remain sealed and will be maintained in a secure location at HSI Long Beach offices.

_____
Diane Asato, Special Agent
Homeland Security
Investigations

Subscribed to and sworn before me
this _____ day of May, 2017.[7]

_____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE

_____

[7] This signature certifies review of the image described in paragraph 32(b).

32

Instrumentality Protocol